IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOGAN INTERNATIONAL INC., et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-13-0492 |
| SURETECH COMPLETIONS (USA), INC., *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion to Dismiss [Doc. # 8] filed by Defendants SureTech Completions (USA) Inc. ("SureTech") and Sanjel (USA) Inc. ("Sanjel"). Plaintiffs Logan International Inc. ("Logan") and Logan Completion Systems, Inc. ("LCS") filed a Response [Doc. # 13], and Defendants filed a Reply [Doc. # 17]. Having reviewed the full record, the Court concludes that this lawsuit should be dismissed based on the doctrine of *forum non conveniens*. As a result, the Court **grants** Defendants' Motion to Dismiss and dismisses this case without prejudice to its being litigated in Canada.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Logan is a Canadian corporation claiming to have its principal place of business in Houston, Texas. Source Energy Tool Services Inc. ("Source") (another Canadian

corporation) developed proprietary technology for manufacturing tools used in fracing operations in oil fields. Sean Campbell, a citizen of Canada, was employed by Source and participated in the development of the proprietary technology. Destiny Resource Service Corp. ("Destiny") purchased Source on May 3, 2010. Destiny then changed its name to Logan International, Inc. on May 13, 2010. Logan's wholly-owned subsidiary, LCS, is the "successor-by-amalgamation" to Source. Plaintiffs allege that Campbell unlawfully misappropriated Source's trade secrets when he resigned his employment with Source and formed his own Canadian company called "SureTech."

In December 2011, Sanjel Corporation acquired Campbell's company. Plaintiffs allege that Sanjel began improperly marketing Source's propriety technology as its own.

Logan filed a lawsuit in federal court on April 13, 2012, naming several defendants including SureTech and Sanjel. *See* Civil Action No. H-12-1139. Logan asserted theft of trade secrets, tortious interference with existing and prospective business relations, unfair competition, violations of the Lanham Act and the Theft Liability Act, conspiracy, conversion, and unjust enrichment against all defendants, including SureTech and Sanjel.

On June 20, 2012, Logan and LCS filed a related lawsuit in Alberta, Canada, against the same defendants named in the federal lawsuit, as well as three employees

of Orion Machining and Manufacturing Inc. ("Orion") ("Canada Lawsuit"). In the Canada Lawsuit, Logan and LCS alleged that Campbell willfully misappropriated Source's confidential and proprietary information. Plaintiffs in the Canada Lawsuit alleged that Campbell and the Orion employees improperly copied Source's tools and marketed them to customers throughout North America.

Defendants in the first federal lawsuit moved to dismiss on the basis of *forum non conveniens* and lack of personal jurisdiction. By Memorandum and Order [Doc. # 23 in Civil Action No. H-12-1139], the Court held that it lacked personal jurisdiction over all defendants except Defendants SureTech Completions Canada Ltd. and Sanjel Corporation (not defendants in this new lawsuit). The Court found also that *forum non conveniens* applied and required dismissal of the "lawsuit" in favor of the Canadian court and without prejudice to its being litigated in Canada.[1]

Logan neither moved for reconsideration nor appealed the Court's ruling. Instead, Logan refiled the lawsuit in Texas state court. In the new lawsuit, LCS is an additional Plaintiff, and SureTech and Sanjel are the only named defendants. Plaintiffs included new allegations that Defendants have made a single sale of the

---

[1]   Plaintiffs argue that the Court's *forum non conveniens* ruling in the prior lawsuit did not apply to these two Defendants. In that lawsuit, the Court had already held that it did not have personal jurisdiction over these two Defendants and, therefore, they were not subject to any ruling by the Court. The Court's analysis and ruling, however, involved whether the lawsuit in its entirety was subject to dismissal based on *forum non conveniens*.

technology to a customer in Texas, and that Defendants made a presentation in August 2012 during a trade show in Houston.[2]

Defendants filed a timely Notice of Removal, and the new lawsuit was transferred to the docket of the undersigned. Defendants moved to dismiss on the basis of *forum non conveniens*.[3] The Motion to Dismiss has been fully briefed and is now ripe for decision.

## II.     DOCTRINE OF *FORUM NON CONVENIENS*

### A.     *Forum Non Conveniens* Generally

Defendants seek dismissal of this case on the basis of *forum non conveniens* in favor of the lawsuit currently pending in Canada. The "doctrine of *forum non conveniens* proceed[s] from [the] premise [that] . . . [i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007) (quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 722 (1996) (emphasis omitted)). "The essence of the *forum non conveniens* doctrine is that a court may decline jurisdiction and may actually dismiss a case, even when the case is properly before the court, if the case more conveniently could be tried in another forum." *In re Volkswagen of Am., Inc.*,

---

[2]     The August 2012 trade show presentation occurred prior to the dismissal of the first federal lawsuit in September 2012.

[3]     Defendants argued also that venue in this district is improper.

545 F.3d 304, 313 (5th Cir. 2008) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). Building on its holding in *Gilbert,* the Supreme Court later established the framework for analyzing *forum non conveniens* in an international context. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). Defendants have the burden to prove all elements in the *forum non conveniens* analysis. *In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147, 1164 (5th Cir. 1987) (en banc).

### B. Plaintiff's Choice of Forum

Ordinarily, a strong favorable presumption is applied to the plaintiff's choice of forum. The plaintiff's choice of forum is not a distinct factor in the analysis, but "it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer." *Volkswagen*, 545 F.3d at 314, n.10. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert,* 330 U.S. at 508. Stated differently, under the *forum non conveniens* doctrine, dismissal is permitted "only in favor of a substantially more convenient alternative." *Volkswagen*, 545 F.3d at 314. This strong showing that the alternative forum is substantially more convenient is required, in part, because dismissal under *forum non conveniens* may cause the plaintiff to "lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate." *Volkswagen*, 545 F.3d at 313, n.8. In this case, however, Plaintiffs have

already filed a virtually identical lawsuit in Canada, and Defendants have affirmatively waived any potential statute of limitations defenses in the Canadian forum.

The plaintiff's choice of forum is not dispositive of the *forum non conveniens* issue. *See, DTEX*, 508 F.3d at 795 (citing *Piper Aircraft*, 454 U.S. at 255-56; *Wilson v. Humphreys (Cayman) Limited,* 916 F.2d 1239, 1246 (7th Cir. 1990)). "Judicial concern for allowing citizens of the United States access to American courts has been tempered by the expansion and realities of international commerce. When an American corporation doing extensive foreign business brings an action for injury occurring in a foreign country, many courts have partially discounted the plaintiff's preference of a United States forum." *DTEX*, 508 F.3d at 795.

In this case, Logan and LCS are both Canadian companies, although they claim to have their principal place of business in Houston. SureTech is a Delaware corporation, and Sanjel is a Montana corporation. It is undisputed that Logan and LCS do extensive business in Canada and that the alleged wrongful misappropriation of LCS's proprietary technology occurred in Canada. As a result, the Canadian Plaintiffs' choice of forum is entitled to little preference.

### C. **Existence of an Alternative Forum**

The Court must first "determine whether there exists an alternative forum." *Id.* at 794 (quoting *Piper Aircraft,* 454 U.S. at 254 n.22). The Court considers whether each Defendant is subject to service of process in the alternative forum, and whether an adequate remedy is available there. *Id.* (citing *Piper Aircraft,* 454 U.S. at 254-55 n.22; *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 493, 424 (5th Cir. 2001); *Gonzalez v. Chrysler Corp.,* 301 F.3d 377 (5th Cir. 2002)). A foreign forum is available when the entire case and all the parties are within that forum's jurisdiction, either by operation of law or by consent. *See id.* (citing *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 835 (5th Cir. 1993) (quoting *In re Air Crash,* 821 F.2d at 1164)). Logan and LCS have a related lawsuit pending in Canada, and Defendants have affirmatively consented to personal jurisdiction in the Canadian court. As a result, the Court concludes that Canada provides an available forum for this dispute.

"A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the benefits of an American court." *Id.* (citing *Baumgart*, 981 F.2d at 835). "Adequacy" does not require that the alternative forum provide identical relief, either qualitative or quantitative, as an American court. *Id.* "In a *forum non conveniens* context, the Supreme Court has stated that a dismissal 'may be granted even though the law

applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." *Calix-Chacon v. Global Intern. Marine, Inc.*, 493 F.3d 507, 515 (5th Cir. 2007) (quoting *Piper Aircraft*, 454 U.S. at 250). A difference in the law that is unfavorable to the plaintiff should not play a significant role in the *forum non conveniens* analysis unless the remedy in the alternative forum "is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft,* 454 U.S. at 254.

Plaintiffs argue that Canada is not an adequate forum because injunctive relief is not available in that forum. Plaintiff's inability to obtain identical relief in Canada does not render the Canadian court inadequate. *See, e.g., DTEX*, 508 F.3d at 797. Moreover, the record reflects that injunctive relief is available in the Canadian court, and that Plaintiffs in the Canada Lawsuit have requested that relief.

The Court concludes that the Canadian court is an available and adequate forum for this dispute. This is true particularly in light of the Canada Lawsuit currently pending there.

### D. Private and Public Interest Factors

The Court must next determine which forum is best suited to the litigation. *See DTEX*, 508 F.3d at 794 (citing *Piper Aircraft,* 454 U.S. at 255). Specifically, the Court must consider whether "certain private and public interest factors weigh in favor

of dismissal." *Id.* (quoting *McLennan,* 245 F.3d at 424). "The court must bear in mind that 'the ultimate inquiry is where trial will best serve the convenience of the parties and the interests of justice.'" *Id.* (quoting *In re Air Crash,* 821 F.2d at 1162 (quoting *Koster v. Am. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527 (1947)).

The private interest factors include: (1) ease of access to evidence; (2) the availability of compulsory process for unwilling witnesses; (3) the cost of willing witnesses attending trial; (4) if relevant, the possibility of viewing the subject premises; and (5) all other factors that might make the trial more efficient or less expensive. *See DTEX*, 508 F.3d at 798 (citing *Gilbert*, 330 U.S. at 508). With reference to the first factor, the vast majority of the relevant documents – particularly those related to the seminal misappropriation issue – are located in Canada or are subject to the control of the Canadian plaintiffs or a Canadian defendant. Plaintiffs argue that key evidence relating to "marketing and sale of these trade secrets" is in Texas, but discovery relating to the single alleged sale in Texas and to the single trade show presentation (at which Plaintiffs' representatives were present) is relevant only once the misappropriation issue has been determined in Plaintiffs' favor.

Regarding the availability of compulsory process, the vast majority of the essential witnesses on the misappropriation issue are employees of Canadian corporations headquartered in Canada. It is unlikely that testimony requiring

compulsory process would be needed to demonstrate an alleged sale of the technology in Texas or to describe a lunchtime presentation at a trade show at which Plaintiffs' representatives were present. Plaintiffs' argument that they would need to subpoena every individual present at the luncheon presentation is unpersuasive. The Court notes also that the district courts in the United States may compel testimony or production of documents from a resident of that district to be used in the litigation in Canada. *See* 28 U.S.C. § 1782(a). There is no indication that Canada provides similar statutory assistance for litigants in the United States to compel testimony and documents from persons residing in Canada. "[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition is to create a condition not satisfactory to litigants." *DTEX*, 508 F.3d at 799 (quoting *Perez & Compania (Cataluna), S.A. v. M/V Mexico I*, 826 F.2d 1449, 1453 (5th Cir. 1987)).

The cost of willing witnesses' attendance weighs in favor of trial in Canada. Although it is likely to be as expensive to travel from Canada to Houston as it is to travel from Houston to Canada, it appears from the evidence that there are significantly more *material* witnesses in Canada than in Houston.

Regarding the fourth factor, there is no indication that a premises view is needed in this case. As to the fifth factor, judicial economy favors resolution of all

claims in one trial. *DTEX*, 508 F.3d at 800. Judicial economy strongly favors trying this case one time in the Canada Lawsuit rather than having one trial in Canada and a second trial in Houston.

The public interest factors include: (1) the administrative difficulties flowing from and involving court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial in a forum that is familiar with the law that governs the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *DTEX*, 508 F.3d at 802 (citations omitted). Regarding the first factor, all courts are busy. The courts in the Southern District of Texas are efficient. Nonetheless, given the likely discovery problems discussed above in trying to obtain discovery from individuals and companies in Canada, there is little likelihood that the case would reach trial here sooner than it would in Canada, where it has already been pending since June 2012.

The third and fourth factors relate to governing law. This lawsuit arises from the alleged misappropriation by Sean Campbell, a Canadian citizen, of proprietary information from a Canadian company in Canada. Campbell then, together with employees of a different Canadian company, allegedly used Source's proprietary information to develop technology that Defendants are currently marketing. It appears

likely that Canadian law will govern the fundamental liability questions in this case because Canada has the "most significant relationship" to the alleged misappropriation. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 705 (5th Cir. 1999); *Jelec USA, Inc. v. Safety Controls, Inc.*, 498 F. Supp. 2d 945, 951-52 (S.D. Tex. 2007). This factor weighs heavily in favor of trying this case in Canada.

The second and fifth factors relate to having controversies resolved locally. This is fundamentally a Canadian dispute between Canadian companies involving alleged trade secret misappropriate by a Canadian individual in Canada. It is Canada that has significantly greatest local interest in the controversy, and it would be unfair to burden citizens in Houston with this Canadian dispute simply because Defendants made a one-time lunchtime presentation during a trade show.

The private and public interest factors indicate that the Canadian forum is a substantially more convenient alternative. As a result, dismissal of this lawsuit in favor of that court is appropriate.

## IV.   <u>CONCLUSION AND ORDER</u>

Defendants have overwhelmingly satisfied their burden to demonstrate that the Canadian forum is substantially more convenient for resolving this dispute. This is particularly true where, as here, the misappropriation issues are pending and should

be resolved in Canada before damages issues become material. Therefore, this lawsuit is dismissed pursuant to the doctrine of *forum non conveniens*, without prejudice and in favor of the pending Canadian Lawsuit. As a result, it is hereby

**ORDERED** that Defendants' Motion to Dismiss [Doc. # 8] is **GRANTED**. The Court will issue a separate Dismissal Order.

SIGNED at Houston, Texas, this **10th** day of **June, 2013.**